STRONG (OGDEN v.). See Case No. 10,460.

## Case No. 13,543a.

### STRONG v. O'NEILL.[1]

District Court, S. D. New York. March 26, 1879.

NATIONAL BANKS— INSOLVENCY—STOCK ASSESSMENT—LIABILITY OF INSURANCE COMPANY—ULTRA VIRES.

[1. The fact that the New York statutes regulating the investments of insurance companies do not authorize them to invest in national bank stock does not render unlawful the taking of such stock by way of pledge, or in payment of a debt. Therefore, when such shares are transferred on the books of a bank from a stockholder to an insurance company, without notice to the bank in what manner they were acquired, it is entitled to presume that they were lawfully acquired; and the insurance company, after holding the stock and receiving dividends thereon, is estopped from setting up an unlawful acquisition for the purpose of escaping liability to an assessment on the subsequent insolvency of the bank.]

1 [Not previously reported.]

[2. There are no special reasons of public policy for exempting an insurance company, which acquires national bank stock in a manner forbidden by its charter, and receives dividends thereon for many years, from the operation of the rule that the defense of ultra vires cannot be interposed for the purpose of escaping the burdens of a completed transaction, after receiving the benefits thereof.]

[This was an action at law by Charles E. Strong, receiver of a national bank, against John P. O'Neill, receiver of the Continental Life Insurance Company, to recover an assessment on certain shares of the bank's stock held by the insurance company. A verdict was directed for plaintiff, and defendant moved for a new trial.]

J. L. Cadwalader, for plaintiff.
Wm. Dorsheimer, for defendant.

CHOATE, District Judge. This is an action brought by the receiver of a national banking association against the receiver of a life insurance company incorporated under the laws of the state of New York to recover an assessment laid pursuant to act of congress upon the stockholders of the bank, which had become insolvent. Upon the trial it appeared that in April, 1868, the Continental Life Insurance Company, of which the defendant has been appointed receiver, caused to be transferred to it on the books of said bank thirty six shares of the capital stock of said bank. That the same were obtained from one Grimwood, the former owner thereof, under the following circumstances: Grimwood was then a policy holder in the life insurance company. The amount of the premium on his policy was $1,048.60 of which $349.53 was charged against him as a loan, and the remainder, $699.07, was due in cash, and was at that time in arrear. Grimwood was also indebted to the company for interest on loans $61.95. Thereupon the company purchased of him the thirty six shares of the bank stock at $90 per share, crediting him with the premium and interest due as paid, and paying him $2,588.47, the balance of the purchase price. Immediately thereafter the stock was transferred in the usual manner on the books of the bank, and from the transfer to the time of the failure of the bank, in April, 1873, the company received its dividends as a stockholder. On the 31st of March, 1877, the defendant was duly appointed receiver of the life insurance company. Prior to his appointment the company paid the first assessment laid by the comptroller of the currency on this stock, being fifty per cent. of its par value. The claim in this suit is upon an assessment for the remaining fifty per cent. of the par value of the stock as held by the company.

The facts being undisputed, a verdict was ordered for the plaintiff, and this is a motion for a new trial on the ground that this direction was error. The only defense made is that the purchase of the stock was prohibited by the laws of New York relating to life in-

surance companies, and that, therefore, the obligation which otherwise the company would have been under to pay the assessment cannot be enforced against it or the receiver. The laws of New York regulate the investments by life insurance companies of their capital and accumulated funds. The securities which they are allowed to invest in do not include the stocks of national banks, and therefore it must be conceded that this purchase was a violation of these statutes. The circumstances do not show that the transaction was, in its character, other than an investment of the funds of the company. The stock cannot be regarded as having been taken simply in discharge of a debt, for the principal part of the consideration was not so paid, but was paid with money which must be regarded as the accumulated funds of the company. There is nothing, however, in the statutes of New York which expressly prohibits a life insurance company from taking, under any circumstances, a transfer to itself of bank stock, or any other valuable property. The inhibition is against investing its capital or accumulated funds in any other than certain specified securities. But such a company is not prohibited from taking other property as collateral security for a debt, or indeed in satisfaction of a debt, and it would be a very narrow construction of the statutes, and one tending to the serious injury of that class of persons for whose benefit this restriction is imposed,—that is, the policy holders and their representatives,—so to hold. In a proper case, where the company cannot collect a debt in money, it is certainly for the interest of the policy holders that it should be allowed to receive any valuable property which the debtor has, and is willing to transfer as security for, or in satisfaction of, his debt. Nor is such a transaction expressly, or by implication, forbidden by the statutes. It is true that such an acquisition of property may be attended by possible future loss, as in this case, if this bank stock had been so received, the taking of it would have been accompanied by a contingent liability in case of the failure of the bank. But I do not think that this circumstance would bring such a case either within the letter or the spirit of the restraining statute, although it is a fact which may affect the duty of the managers of the company in dealing with the property when acquired, or the proper discretionary exercise of their powers as managers in determining whether or not they should accept the property at all. Now, in the present case, the bank had no notice that these shares were not lawfully and properly acquired by the life insurance company. A party dealing with a corporation may indeed be held to take notice that an act done by the corporation is absolutely, and under all circumstances, prohibited. But it is otherwise as to an act which it may or may not be authorized to do according to the existence or nonexistence of certain facts and circumstances peculiarly within the knowledge of the corporation itself. If there is any presumption as regards a third party dealing with the corporation on the faith of the act done, it is that the circumstances necessary to make the act lawful exist. Cooke v. State Nat. Bank of Boston, 52 N. Y. 96. The doing of the act, which is valid if certain circumstances exist, is a holding out by the corporation to those dealing with it that they do exist, and, ordinarily, a corporation would thereby be estopped to deny the existence of those circumstances as against a party who has, upon the faith of such representations, parted with value. Id. In the present case neither this bank nor its receiver has been at fault. They are not chargeable with notice that this was an investment of the capital or of the accumulated funds of the life insurance company. The bank has paid the company its dividends as a stockholder, and extended to it all the other benefits of ownership in the stock, on the faith that the transfer which released Grimwood from this contingent liability was lawful and proper. The defendant is therefore estopped to set up this defense, unless there is something in the nature of this corporation, or in the peculiar nature of the unauthorized act, which creates an exception in its favor.

As to the character of the defendant corporation, it is urged that life insurance companies are organized for the relief and protection of those who are helpless, and especially entitled to the protection of the legislature and the courts; that the policy holders, and those who succeed to their interests, do not choose the managers, and do not sustain the same relation to the corporation which stockholders generally do to corporations. It is also urged that banks are essentially trading and commercial corporations; that their stockholders, and those who deal with them, and thereby become creditors, take their stock, and deal with them, with full notice that this is their character; and that their investment in the stock, and other dealings in the securities of the bank, is at the risk of losses arising from commercial disaster. All this is very true, but it does not reach nor affect the present question. The doctrines of equitable estoppel are based on the theory that their application is essential to secure and promote fair dealings between the parties entering into business transactions with each other. They are the creations of the courts for the prevention of fraud, or such misleading of one party by another as would work an injury or injustice equivalent to a fraud, whether in fact so intended or not. They are, therefore, and must be, universal in their application, and no corporation which can transact the particular kind of business in respect to which the estoppel may arise can be held exempted from their wholesome operation, unless by express legislative enactment. It is true that the policy holders, and especially those who have by their death succeeded to their interests,

are entitled to all proper protection by legislatures and courts; but, like all other parties, they may suffer loss from the misconduct of those who, even without their votes, are chosen to manage their affairs. As against those parties, their protection and remedies will be ample and rigorously enforced. But they cannot be shielded against all possible misuse by these (their representatives) of the powers necessarily instrusted to them; and from enlarged considerations of public policy, and for the sake of preventing greater injustice to innocent parties, this protection must cease where, according to the doctrines of equitable estoppel, it would work such greater injustice.

The point, however, principally urged by the learned counsel for the defendant is that the contract made by this corporation in violation of the terms of its charter was ultra vires, and that it was void as against public policy, and that no such contract void as against public policy can be enforced by the court. The general prohibition of corporations from exercising powers not conferred on them by their charters undoubtedly rests on considerations of public policy, and the proper enforcement of such prohibition is of great importance to the public. There is nothing, however, in this case making the inhibited and unauthorized act in any sense more peculiarly against public policy than every other act done by a corporation without authority of its charter, or in violation of any other similar restraining act; and I think the weight of authority is that this defense of ultra vires cannot ordinarily prevail where the contract has been fully executed by the other party, and the corporation setting up the defense has received all its benefits and advantages, and avails itself of the unauthorized character of the acts, merely to protect itself from the liability imposed on it by the contract for securing to the other party to the contract those compensating advantages, the full consideration of which the corporation has enjoyed and still retains. That, as applied especially to executed or partly executed contracts, the defense of ultra vires is not an absolute defense, but one which is applied with a due regard to all the circumstances of the particular case, and to the proper protection of both parties, so far as is possible, from wrong and injustice. As expressed in the recent case of Whitney Arms Co. v. Barlow [unreported]: "The plea of ultra vires should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong." See, also, Bissell v. Michigan, S. & N. I. R. Co., 22 N. Y. 258.

In the present case it would clearly not advance justice, and would accomplish a legal wrong, to allow this plea. The stockholders and the creditors of this bank have, by act of congress, the absolute liability of all the stockholders, to the amount of the par value of their stock, for their security in dealing with the bank as stockholders or creditors. By an act by which the terms of the act of congress absolutely released Grimwood, who, as the former owner of these shares, was bound to this extent, the life insurance company made itself apparently the holder of these shares, and so remained down to the time when this contingent liability of stockholders became absolute by the failure of the bank. This act, though unauthorized in fact by the charter of the company, was one which it might, under certain circumstances, lawfully do. It might become owner of the stock in satisfaction of a debt, or it might become pledgee of the stock as collateral, or, in either case, it could lawfully have the stock transferred into its name. As between itself and the former owner, the contract has been executed, and no movement has ever been made to have it vacated, annulled, or set aside. So long as the stock had any value, the company treated it as its own, and not Grimwood's and took its dividends for some five years. As between the bank and the corporation, it has also had and enjoyed all the benefits—and they have been valuable and substantial—of the transaction by which it became an apparent stockholder in April, 1868, and these benefits have all been conceded to show the faith of its having become such stockholder in fact. No case is cited which would justify the upholding of this plea of ultra vires against countervailing equities so strong.

It has been assumed, in dealing with the question, that no title to the shares vested in fact in the company by reason of want of authority to make the purchase, and it is clear that, even on this theory, the plaintiff is entitled to his verdict on the doctrine of equitable estoppel. It is not necessary to decide whether, as between Grimwood and the company, the title is to be deemed to have passed. It does not seem to me certain, notwithstanding the prohibition of the statutes of New York, that, where the directors of such a corporation purchase property which, by the charter, they are not allowed to purchase, that the title does not pass, in a case where the statute does not expressly declare that the title shall not pass. To hold that the title does not pass would in many cases expose the corporation and its helpless policy holders to greater loss and injury than they would otherwise suffer from the unauthorized transaction. In this case, where they have parted with their money, and have only a possibility of recovering it back from a purchaser perhaps insolvent, if the title to the property is not vested in the company, it is in a position where it may lose both the money and the property, for, if it has no title, it cannot sell the property, and so remedy, in whole or in part, the wrong already done to the policy holders. It may be, in such a case, the title should be deemed to pass, with the right on the part of compa-

ny to have the transaction annulled, if it so elect. But this question is not directly involved in the determination of this motion. Motion denied.